# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

In re Scott Cable Communications, Inc., : Chapter 11
: Case No. 98-51923 (AHWS)
Debtor.

*Appearances*:

| | | |
|---|---|---|
| Peter Sklarew, Chief, Civil Trial Section | : | Attorneys for |
| Northern Region | : | Internal Revenue Service |
| United States Department of Justice | : | |
| P.O. Box 55 | : | |
| Washington, D.C. 20044 | : | |
| | | |
| Christine Sciarrino, Assistant U.S. Attorney | : | |
| United States Department of Justice | : | |
| 157 Church Street | : | |
| New Haven, CT | : | |
| | | |
| Daniel H. Golden, Esq. | : | Attorneys for |
| Abid Qureshi, Esq. | : | Scott Cable Communications |
| Akin, Gump, Strauss, Hauer & Feld, LLP | : | |
| New York, NY | : | |
| | | |
| Craig I.Lifland, Esq. | : | |
| Zeisler and Zeisler | : | |
| Bridgeport, CT | : | |
| | | |
| Ira H. Goldman, Esq. | : | Attorneys for |
| Kathleen M. LaManna, Esq. | : | Indenture Trustee |
| Marie C. Pollio, Esq. | : | |
| Shipman & Goodwin LLP | : | |
| Hartford, CT | : | |
| | | |
| Steven E. Mackey, Assistant U.S. Trustee | : | |
| Office of the U.S. Trustee | : | |
| New Haven, CT | : | |

**Alan H. W. Shiff, United States Bankruptcy Judge.**

MEMORANDUM AND ORDER ON MOTION
OF THE UNITED STATES TO CONVERT OR
APPOINT A CHAPTER 11 TRUSTEE

  Scott Cable Communications, Inc. ("Scott") began its quest for bankruptcy relief in February 1996 when it commenced a chapter 11 case in the District of Delaware. The Delaware case closed on July 31, 1998, but the Delaware bankruptcy court has been drawn into this case. On October 1, 1998, Scott filed this chapter 11 case with a prepackaged plan which was premised upon events that occurred in the Delaware case. Since June 2000, the United States, representing the Internal Revenue Service ("government"), has sought an order to convert this case and subsequently sought, as alternative relief, the appointment of a chapter 11 trustee. On July 18, 2002, the court denied the government's motion to convert or appoint a chapter 11 trustee.[1] The government appealed. On October 15, 2008, the district court vacated the court's denial of the government's motion to convert and remanded that matter with the direction that the court re-exercise its discretion. *See United States v. Scott Cable Commc'ns, Inc. (In re Scott Cable Commc'ns, Inc.)*, No. 3:02CV01725 (AWT), 2008 WL 4614287, *1 (D. Conn. Oct. 15, 2008) (hereinafter, the "Remand Order" or *Scott Cable II*"). The government's remanded conversion motion is the subject of this memorandum and order.

---

[1] The order also granted the debtor's sixth cash collateral application.

## BACKGROUND

The path between the government's motion to convert and this re-exercise of discretion has been intersected by events that occurred in the Delaware case. The relevant parts of the record in that case must be identified as they provide a significant part of the predicate for the conclusions reached here.

On February 14, 1996, Scott commenced a chapter 11 case in District of Delaware. The government filed a notice of appearance as a "party in interest". It was not a creditor. The government received copies of Scott's second amended disclosure statement and second amended plan. Among other provisions, the plan called for the issuance of "New Restructured Third Secured PIK Notes" in the amount of $38.9 million ("Jr. PIK Notes" or "Jr. PIKs") that would be secured by all of Scott's assets and be subordinated to other security interests. The accompanying disclosure statement stated that the liquidation of Scott was a potential alternative to reorganization. *See, e.g., In re Scott Cable Commc'ns, Inc.*, 277 B.R. 596, 598 (Bankr. D. Conn. 1998).

The second amended plan was confirmed by the Delaware bankruptcy court on December 6, 1996 ("Delaware Plan"). On December 18, 1996, in accordance with the Delaware Plan, an indenture agreement was executed under which an indenture trustee was established and the Jr. PIK Notes were issued.

On July 10, 1998, Scott executed a purchase and sale agreement for the sale of all of its property. The sale would generate approximately $29.9 million in capital gains taxes and $7.5 million in other federal and state taxes. That agreement was not submitted to the Delaware bankruptcy court. The Delaware case was closed on July 31, 1998.

On October 1, 1998, Scott filed for chapter 11 bankruptcy relief in this court. The filing included a prepackaged liquidation plan which contemplated a sale of all of Scott's property. The plan did not provide for the payment of any capital gains taxes. On November 13, 1998, the court authorized the sale of Scott's assets. On November 16, 1998, the government objected to confirmation, arguing, *inter alia,* that the prepackaged plan was a tax avoidance scheme. The court agreed and on December 11, 1998 sustained the government's objection. *See In re Scott Cable Communications, Inc.*, 277 B.R. 596 (Bankr. D. Conn. 1998).[2]

Thereafter, Scott sought authorization to consummate the sale outside of a plan. On January 14, 1999, Scott was granted authorization to sell all its property, and on February 12, 1999, the sale closed ("Asset Sale"). All secured debt senior to the

---

[2] The court stated, *inter alia*:

> The plain language of [11 U.S.C. § 1129(d)] demonstrates congressional intent to insure the collection of allowed tax claims by providing a higher level of protection than the priorities established by § 1129(a)(9). While the (a)(9)(A) priorities relate to the payment of administrative expenses including the payment of taxes, § 1129(d) extends to the purpose of a plan. That analysis is especially important in cases where, as here, the Plan does not provide for the payment of taxes.
>
> * * *
>
> The Debtor has conceded that "[t]he principal purpose of the Plan . . . has always been to structure a sale . . . that is acceptable to [the Jr. PIK Note Holders]. . . ." It is apparent that in order for that group to benefit from the Sale, the Plan would have to structure the Sale so that there would be no administrative capital gains tax and no future tax liability for the Jr. PIK Note Holders, and that is its principal purpose. Accordingly, the Plan does not escape the § 1129(d) prohibition, and it cannot be confirmed.

*In re Scott Cable Commc'ns, Inc.*, 277 B.R. at 603-04 (internal citations omitted).

holders of the Jr. PIK Notes was paid in full, so that as of that date Scott had no property other than the net proceeds of the Asset Sale.

Prior to the Asset Sale, *i.e.*, on November 19, 1998, the government commenced adversary proceeding No. 98-5104 against the indenture trustee and the holders of the Jr. PIK Notes, seeking a determination that the holders of the Jr. PIK Notes be recharacterized as holders of equity interests, or in the alternative, that they be equitably subordinated to the government's claim for capital gains taxes that would arise out of the Asset Sale. On December 14, 1998, Scott filed a motion to intervene and for judgment on the pleadings. On December 17, 1998, the indenture trustee filed a motion for summary judgment, asserting that the order confirming the Delaware Plan barred the government's recharacterization and equitable subordination claims. On March 9, 1999, the court granted Scott's motion to intervene. On April 26, 1999, the court granted the indenture trustee's motion for summary judgment. *See In re Scott Cable Communications, Inc.*, 232 B.R. 558 (Bankr. D. Conn. 1999). The government appealed. On March 9, 2001, the district court reversed and remanded. *See United States v. State Street Bank and Trust Co. (In re Scott Cable Commc'ns, Inc.),* 259 B.R. 536, 547-48 (D. Conn. 2001) (holding that, even assuming government was a party in interest in the Delaware case and that the party in interest status was sufficient to make the Delaware Plan binding upon it, the government did not receive adequate notice that confirmation might affect its pecuniary interest).

Thereafter, in response to a *sua sponte* order to show cause why this entire case should not be transferred to the Delaware bankruptcy court, the issue of transferring only the adversary proceeding to that court was considered. *See United States v. State*

*Street Bank and Trust Co. (In re Scott Cable Commc'ns, Inc.)*, 263 B.R. 6,7 (Bankr. D. Conn. 2001). The court concluded, over the government's objection, that the Delaware bankruptcy court was best suited to determine whether the classification of the Jr. PIKs' security interests was binding on the government since that court confirmed the Delaware Plan. *See id.* at 9. Thus, on June 7, 2001, the court ordered that adversary proceeding No. 98-5104 be transferred to the Delaware bankruptcy court (hereinafter, the "Delaware Proceeding").[3]

On June 29, 2000 (between the commencement of the Delaware Proceeding and its transfer to the Delaware bankruptcy court), the government filed the instant motion to convert, noting that the only property remaining in the Scott estate after the Asset Sale was cash which should be administered by a chapter 7 trustee. Scott and the indenture trustee objected. At an August 8, 2000 hearing, the government acquiesced to the court's suggestion that consideration of its conversion motion be deferred until the district court decided the appeal of this court's summary judgment order.

As noted, on March 9, 2001, the district court reversed and remanded the summary judgment order. On July 3, 2001, the government supplemented its conversion motion, adding as a new basis for conversion that Scott had a conflict of interest. The government reasoned that Scott had a fiduciary obligation to seek recovery of administrative tax claims under bankruptcy code § 506(c). However, since

---

[3] The government moved for leave to appeal the change of venue which was denied in a margin endorsement. *See United States v. State Street Bank and Trust Co.*, No. 3:99CV918(AWT) (D. Conn. Aug. 30, 2001).

Scott's management would receive a 21.5% interest in any distribution received by the Jr. PIK note holders, that pecuniary incentive clashed with Scott's obligation.  *See, Scott Cable I*, 2007 WL 2669108, at *3.  That argument was buttressed by the then-recent Supreme Court holding in *Hartford Underwriters Insurance Company v. Union Planters Bank*, 530 U.S. 1 (2000), that a trustee is the only party who can assert a § 506(c) claim.[4]  Again, Scott and the indenture trustee objected.

The government's conversion motion remained dormant until May 30, 2002.[5]  On that date, the government again supplemented its original conversion motion with the claim that Scott's management had additional conflicts of interest.  That motion also sought the alternative relief of the appointment of a chapter 11 trustee.

---

[4] The version of §506(c), which was applicable at the time (*i.e.*, prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") ), provided:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c) (West 1994).

[5] During that time the debtor sought permission from the Delaware bankruptcy court to intervene in the Delaware Proceeding.  The motion was granted.  *See United States v. State Street Bank and Trust Co. (In re Scott Cable Commc'ns, Inc.)*, No. ADV. A-01-04605, 2002 WL 417013 (Bankr. D. Del Mar. 4, 2002) (hereinafter, the "Delaware Intervention Order").

On June 5, 2002, the court conducted a hearing[6] on the government's conversion motion.[7]  The government reiterated its positions, including a claim "that there was no ability for [Scott] to reorganize . . . ." (Hr'g Tr. 45:18-22, June 5, 2002, *In re Scott Cable Commc'ns, Inc.*, No. 98-51923.)  The government further argued that Scott was attempting to pay its attorneys for the improper purpose of defending the Jr. PIKs' secured status.  (*See id.* at 47:13-24.)  It then argued that with a chapter 7 or chapter 11 trustee to oversee Scott there would be a neutral party who could waive Scott's attorney-client privilege, which might produce evidence helpful to the government in the Delaware Proceeding.  (*See id.* at 48:14-49:1.)  The Office of the U.S. Trustee supported the government's conversion motion,[8] arguing that Scott had no business to operate, the case was administratively insolvent, and all that was left was the Delaware Proceeding.  (*See id.* at 49:16-23;  50:20-24.)

Scott objected,[9] arguing that the government was "attempting to circumvent" the Delaware Intervention Order, *see*, *supra*, note 5, and that Scott "had a duty to intervene

---

[6] The hearing on the conversion motion was consolidated with the hearing on the debtor's sixth cash collateral application.

[7] Henceforth, the "conversion motion" connotes the government's initial request for conversion and its supplemental, alternative request for appointment of a chapter 11 trustee.

[8] After the June 5, 2002 hearing, the U.S. Trustee filed a supporting statement joining the government in its request for conversion to chapter 7 or appointment of a chapter 11 trustee.

[9] In its original opposition papers (*see* doc. #268), Scott asserted that converting the case to chapter 7 and having a chapter 7 trustee appointed would add unnecessary layers of expense to this case.  (*See id.* at 16.)  It also claimed that the appointment of a chapter 7 trustee would, in essence, "unfairly place a choke hold around the debtor and its estate with respect to any further litigation." (*Id.* at 17.)

in the litigation and act on behalf of the secured note holders." (*Id.* at 55:18-22.) The indenture trustee also opposed the government's conversion motion and alternative motion for appointment of a chapter 11 trustee essentially on the grounds articulated by Scott.[10] (*See id.* at 61:5-16.)

On July 18, 2002, the court denied the government's motion to convert or appoint a chapter 11 trustee ("July Order"). The government appealed.[11] The district court affirmed on September 6, 2007. *See United States v. Scott Cable Commc'ns Inc. (In re Scott Cable Commc'ns, Inc.),* No. 3:02CV01725 (AWT), 2007 WL 2669108, *3 (D. Conn. Sept. 6, 2007) (hereinafter, "*Scott Cable I*"). On September 17, 2007, the government moved for a rehearing, requesting the district court require this court to re-exercise its discretion "freed from its incorrect belief that it was precluded from weighing an important factor." *United States v. Scott Cable Commc'ns Inc. (In re Scott Cable Commc'ns, Inc.),* No. 3:02CV01725 (AWT), Gov't's Reh'g Mot. (D. Conn. Sept. 17, 2007). The government was concerned that this court had not considered its conflict of interest argument because of a mistaken belief that it was precluded from doing so by the Delaware Intervention Order which had neither collateral estoppel nor law of the

---

[10] In its original opposition papers, the indenture trustee asserted that conversion would force Scott "out of existence" and that this "forced extinction of [ Scott] will make it harder to defend an attack by the United States against [ Scott's] pre-1996 debt structure." (Doc. #269 at 5; *see also* id. at 4 ("[Scott] is the only party to these proceedings in a position to adequately defend the 1996 Plan from the IRS attack.").) The indenture trustee alleged the conversion motion is no more than a litigation tactic by the government. (*See id.* at 6.)

[11] That appeal was subsequently consolidated with a later appeal by the government of this court's December 23, 2002 Order granting one of Scott's applications to pay its attorneys.

case effect. *See id.* at 14. On October 15, 2008, the district court issued the instant Remand Order which adopted the government's position. *See Scott Cable II*, 2008 WL 4614287, at *1.

> With respect to the conversion/appointment of a trustee issue addressed in the July Order, the [*Scott Cable I*] Opinion discusses reasons why the motion to convert or appoint a chapter 11 trustee could have been denied. That discussion, however, does not resolve the question of whether the Connecticut Bankruptcy Court properly exercised its discretion in denying the motion to convert or appoint a trustee. Although that motion is referred to in footnote 2 of the July Order, the [*Scott Cable I*] Opinion acknowledges that the meaning of footnote 2 is unclear. The July Order does not explicitly set forth the Connecticut Bankruptcy Court's reasons for denying the motion for conversion or appointment of a trustee. The [*Scott Cable I*] Opinion includes the [district] court's analysis of factors it appeared the Connecticut Bankruptcy Court viewed as being important reasons for not converting the case and the [district] court's analysis of why the factors cited by the United States were not necessarily dispositive. But the [*Scott Cable I*] Opinion does not address whether the Connecticut Bankruptcy Court considered the United State's arguments based on the Debtor's alleged conflict of interest other than to conclude the United States was precluded from making them.

*Id.* Thus, finding the record below was insufficient to definitively conclude that this court abused its discretion and to ensure that this court did not decide the government's conversion motion on an erroneous view of the law, the district court vacated the July Order and remanded the conversion motion for the *"re-exercise of discretion"* in deciding whether to convert the case or to appoint a chapter 11 trustee. *See id.* at *1-2 (emphasis added).

On December 17, 2008, the court conducted a hearing regarding the Remand Order during which the parties were given a full opportunity to articulate their relevant

positions as to the re-exercise of discretion mandated by the Remand Order. Having considered those arguments, the position papers which the court ordered the parties to file, and the relevant parts of the record, the court now determines that no further briefing is necessary. It is further noted that the government's unsolicited, 40-page brief will not be considered.

## DISCUSSION

In construing the mandate in *Scott Cable II*, the words employed must be given their plain meaning. *Cf. United States v. Wiltberger*, 5 Wheat. 76, 95-96, 5 L. Ed. 37 (1820) (Marshall, C.J.) ("The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest."); *Harris v. Sullivan*, 968 F.2d 265 (2d Cir. 1992) (words to be given their ordinary, contemporary, common meaning). *Re-exercising* is not the equivalent of *clarifying*. "Re-" is a prefix meaning "again" or "anew". *See Webster's New Collegiate Dictionary* 960 (1975). Therefore, adding that prefix to "exercise" means exercise again or anew. In essence, it is a "do over". Conversely, to "clarify" is "to free of confusion" or "to make understandable". *See id.* at 206. Accordingly, clarifying is not re-doing an act, but rather explaining more clearly what has already been done. It follows then that the district court's Remand Order did not affirm the result of the July Order subject to a clarification that more clearly articulated the same result. Rather, the district court rejected the July Order and directed this court to re-

exercise its discretion in deciding the motion anew.

Section 1112(b) provides in relevant part:

> . . . on request of a party in interest. . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including –
>
> * * *
>
> (2) inability to effectuate a plan;
>
> * * *

11 U.S.C. § 1112(b)(2)(West 2002).[12]

It is the movant's burden to establish cause. *See In re Adbrite Corp.,* 290 B.R. 209, 214 (Bankr. S.D.N.Y. 2003). "Once cause for relief is shown, the Court has broad discretion to either convert or dismiss the chapter 11 case. Although this discretion is not completely unfettered, the Court is not required to give exhaustive reasons for its decision." Id. at 215 (citing *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986)); *see also In re Kingston Square Assocs.,* 214 B.R. 713, 724 (Bankr. S.D.N.Y. 1997) ("a bankruptcy judge has wide discretion to determine if cause exists and how ultimately to dispose of the case").

When presented with a § 1112(b) motion, the bankruptcy code "directs the court to consider 'the best interests of the creditors and the estate' in evaluating whether to convert a chapter 11 case to chapter 7 or to dismiss the case, and includes *a non-exclusive set of factors* that would provide cause for conversion or dismissal." *Scott Cable I*, 2007 WL 2669108, at *2 (emphasis added); *see also In re Palmer*, 134 B.R. 472, 476 (Bankr. D. Conn. 1991) (where a debtor in possession cannot effectuate a

---

[12] As this case was filed before the enactment of BAPCPA, the pre-BAPCPA § 1112(b) is applicable. *See generally In re Dapontes*, 364 B.R. 866 (Bankr. D. Conn 2007) (effective date of BAPCPA is October 17, 2005; BAPCPA does not apply to cases filed before October 15, 2005).

plan, dismissal or conversion is appropriate)*; In re Adbrite*, 290 B.R. at 217 ("A finding of cause is not limited to the grounds stated in § 1112(b)"; and "the list of grounds for converting or dismissing a chapter 11 case under § 1112(b) is illustrative, not exhaustive"); *Quarles v. U.S. Trustee,* 194 B.R. 94, 96 (W.D. Va. 1996) (instructing that bankruptcy court may consider additional grounds other than those listed in § 1112(b), and stating that failure to file a plan or reorganization, standing alone, can justify a finding of "cause").

In the re-exercise of its discretion on whether to grant the government's conversion motion, the court reviews the record as it was at the time the July Order entered. As of that time:

1. Scott's prepackaged chapter 11 plan had been denied confirmation, and it had not filed any other plan;
2. the Asset Sale had reduced all of Scott's property to cash;
3. the cash had been distributed to pay all debt senior to the holders of the Jr. PIK Notes;
4. the Delaware Proceeding, which would determine whether the Jr. PIK Notes would have priority over the government's tax claim, was pending in the Delaware bankruptcy court;
5. the resolution of that proceeding would define the priority for the distribution of the cash from the Asset Sale; and
6. Scott conceded that it did not intend to file a plan.[13]

---

[13] As Scott stated in its original opposition to the government's conversion motion:

> It has been a fact of this case since December, 1998, when this Court issued the [December 11, 1998] Memorandum and Order [sustaining the government's objection to the confirmation of Scott's proposed prepackaged liquidating chapter 11 plan], that [*Scott*] *will not propose another plan of reorganization or even a liquidating plan*. [Scott] and its largest creditors . . . realized that the best way to serve the interest of creditors and the estate was to effectuate a sale of assets outside of a plan of

Therefore, as of July 2002, there was nothing in the record from which it might reasonably be concluded that after the resolution of the Delaware Proceeding there would be anything left to administer in this case except the distribution of the remaining cash in accordance with the order of the Delaware bankruptcy court.

The government has consistently argued that this case should be converted because Scott cannot effectuate a plan and has a conflict of interest with its management. *See*, *supra*, pp. 6-7. Scott and the indentured trustee counter that the appointment of a chapter 7 trustee would complicate the Delaware Proceeding and add unwarranted delay and expense. *See*, *supra*, notes 9 and 10.

Considering those positions in reverse order and ignoring the fact that the evidence in the Delaware Proceeding is now closed, it is apparent that the gravamen of Scott's and the indenture trustee's arguments require the speculation that a chapter 7 trustee would have been permitted to intervene in the Delaware proceeding and that the trustee would have become an active litigant. The indulgence of such arguments would be grounding this court's re-exercise of discretion on speculation, which is not an appropriate foundation upon which to base a §1112(b) decision. Moreover, the argument that an appointed trustee would be allowed, as reasonable compensation, the maximum statutory percentage under § 326(a) is unpersuasive. Like any other request for compensation, a trustee's allowance would be subject to the court's review for reasonableness. And, if the trustee's services consisted of a distribution of the remaining cash in accordance with the Delaware bankruptcy court's order, it is highly unlikely that the maximum allowance under § 326(a) would be allowed.

Those observations aside, the government's argument that Scott cannot effectuate a plan resonates with the record as of the July Order.[14] As noted, as of that

---

reorganization through the [Asset Sale].

Scott's Obj. at 15 (emphasis added) (doc. #268).

[14] It is clear from the Remand Order that this court *may*, but is not directed to, consider the government's alternative conflict of interest argument. The court need not address that argument as it has found cause warranting conversion on another basis.

time there was no substantive predicate for a plan, *see*, *supra*, p. 13. Indeed, any attempt by Scott to effectuate a plan would result in unwarranted delay and expense, and this case has had too much of both. *See In re Adbrite*, 290 B.R. at 216; *see also Moody v. Sec. Pacific Bus. Credit, Inc.*, 85 B.R. 319, 346 (W.D. Pa. 1998) (instructing that where a debtor had no business and was merely a corporate shell, such facts constitute an inability to effectuate a plan, and conversion or dismissal is proper). Accordingly, the government has satisfied its burden of establishing cause warranting conversion under § 1112(b).

Having found cause pursuant to § 1112(b)(2), the court concludes the best interest of creditors and the estate will be best served by such conversion rather than the dismissal of this case since the Delaware Proceeding is still pending and will resolve the last remaining administrative task in this case, *i.e.*, an order for the distribution of the cash. *See, e.g., In re Hampton Hotel Investors, Inc.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) (instructing that whether to dismiss or convert a chapter 11 case is "a matter for sound judicial discretion").

## CONCLUSION

For the foregoing reasons, the government's motion to convert this case to chapter 7 is GRANTED, Scott's sixth cash collateral motion (styled as a "Stipulation For Continued Use of Cash Collateral") is DENIED as moot,[15] and
**IT IS SO ORDERED.**[16]

Dated this 9th day of March 2009 at Bridgeport, Connecticut.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge

---

[15] *See*, *supra*, note 1. In *Scott I*, the district court vacated and remanded the granting of the sixth cash collateral motion. *See Scott I*, 2007 WL 2669108, at *9.

[16] Scott's two Applications for Interim Allowance of Compensation and For Reimbursement of Expenses, vacated and remanded in *Scott I*, are deferred.